AARON M. GOLDSMITH, ESQ.
Attorney for Plaintiff
225 Broadway, Suite 715
New York, NY 10007
(914) 588-2679
*aarongoldsmithlaw@gmail.com*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
ANDREW GREENE,                                         Docket No.: **14 CV 1044(JS)(SIL)**

                                    Plaintiff,

-against-


PARAMOUNT PICTURES CORPORATION, a Delaware
corporation, RED GRANITE PICTURES, INC., a California
corporation, APPIAN WAY, LLC., a California limited
liability company, SIKELIA PRODUCTIONS, INC., a
Delaware corporation, and JOHN AND JANE DOES 1
THROUGH 10,

                                    Defendant(s),
-------------------------------------------------------------------X

---

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

**TABLE OF CONTENTS**

PROCEDURAL HISTORY…………………………………………………………………3

STATEMENT OF FACTS………………………………………………………………..3

ARGUMENT……………………………………………………………………………...7

      RULE 56.1 STATEMENTS………………………………………………………7

      LEGAL STANDARD FOR SUMMARY JUDGMENT...……………………………..8

      PLAINTIFF CAN SATISFY THE ACTUAL MALICE ELEMENT…………………10

      "OF AND CONCERNING" PLAINTIFF…...…………………………………………15

      PLAINTIFF CAN SATISFY THE ELEMENTS OF LIBEL *PER SE*……………...17

      DEFENDANT'S ARGUMENT ON SPECIAL DAMAGES IS MERITLESS……….19


CONCLUSION………………..…………………………………………………...…20

## PROCEDURAL HISTORY

In or about December, 2013, the subject film THE WOLF OF WALL STREET was released.  The film was produced, in part, by Defendant APPIAN WAY, as a corporate extension of Actor LEONARDO DiCAPRIO.   The film was produced, in part, by Defendant RED GRANITE, which financed the production.    The film was distributed by Defendant PARAMOUNT PICTURES.  The film was also produced, in part, by Defendant SIKELIA, as a corporate extension of Director MARTIN SCORSESE.   As the Court is aware, Defendant SIKELIA has recently been dismissed procedurally for lack of diversity. (Dkt. 66)

Plaintiff filed this action on February 18, 2014.  Shortly thereafter, the Defendants filed a motion to dismiss pursuant to FRCP 12(b)(6).  As the Court is aware, the motion prevailed on three (3) of the four (4) causes-of-action, leaving the parties to litigate the claim of libel *per se*. (Dkt. 25)

The parties have proceeded through documentary discovery and depositions.  Following a pre-motion conference on December 18, 2017, Defendants filed a motion for summary judgment.  (Dkt.73)

## STATEMENT OF FACTS

The subject motion picture is based on a 2007 memoir written by Jordan Belfort and published by Bantam Books that is also entitled "The Wolf of Wall Street".  Jordan Belfort's 2007 memoir entitled "The Wolf of Wall Street" (hereinafter the "memoir") purports to be a true story of Mr. Belfort's rise to prominence and infamy through his unscrupulous brokerage/securities firm known as Stratton Oakmont.

3

Mr. Greene attended law school from 1986 through 1990 at California Western Law School.  He worked part-time at his brother's firm, Fortress Securities, while studying for the California Bar Exam.  (Plaintiff Trx)

During his limited tenure with Stratton Oakmont, Mr. Greene was the head of its Corporate Finance Department. Mr. Greene also served on Stratton Oakmont's Board of Directors.  He was recruited by Mr. Belfort to work at the firm, and began working there in 1993. Mr. Greene resigned from his positions at Stratton Oakmont in 1996, shortly before regulatory agencies disbanded the firm.  (Plaintiff Trx)

At the time Mr. Greene began working at Stratton Oakmont, Mr. Belfort had been subject to an SEC Consent Order, barring him from participating in the management or day-to-day operations of his firm.  Mr. Greene's roles within the Corporate Finance Department were to review and prepare prospective start-up companies for venture capital projects, as well as assist in corporate filings for same.  Mr. Greene also shared responsibility for maintaining the firm's segregation from Mr. Belfort and assisting counsel in all regulatory compliance.  To those ends, Mr. Greene assisted in all regulatory and FINRA claims, was viewed as enforcement and a leading figure in trying to bring Stratton Oakmont into compliance.  (Plaintiff Trx; Arnoff Trx pgs 19, ln 23 – 21, ln 11; pg 65, lns 1 – 17; pgs 69, ln16 – 70, ln16)

In the memoir, Mr. Greene is referred to by his legal full name, Andrew Todd Greene, the shortened name, Andy Greene or Andy, and the nickname "Wigwam." (Book is annexed as Def. Exhibit 1 to the Belfort Declaration, at pages 66-67.)  Mr. Greene was described as not having the same mindset as Mr. Belfort and Danny Porush (Mr. Belfort's "second in command" who was portrayed as the character "Donny Azoff" in the subject film.)  Mr. Greene's introduction in the book was wholly unflattering from the perspective of a criminal mind.  "Having no

4

experience in the subtle art of Stratton-style corporate finance – identifying fledgling growth companies so desperate for money that they were willing to sell a significant chunk of their inside ownership to me before I financed them – I was still in the process of training him.  (Def. Belfort Ex. 1 at 66-67)  More pointedly, in discussing Mr. Greene's one-time assessment of a business rival, Mr. Belfort recalled "I smiled at Wigwam, who had just confirmed what I already knew-that he was not a wartime consigliere and would be of little help to Danny [Porush] in matters like these."  (Def. Belfort Ex. 1, pg. 273)

In the motion picture, Mr. Greene's likeness, image, and characterization is portrayed through the character Nicky "Rugrat" Koskoff (hereinafter "Rugrat").  Mr. Greene's identity is readily apparent in the motion picture.  The character "Rugrat" is depicted as one of Jordan Belfort's friends, an attorney who worked in the corporate finance department of Stratton Oakmont and a man of stocky size who wore a poorly fitting wig.  To those who were familiar with Stratton Oakmont, the character was an unflattering caricature of Plaintiff.  (See the deposition transcripts of Arnoff, Gelfand, Kaufman and Portnoy.)

Beyond a simple background caricature, the "Rugrat" character is portrayed as engaging in regular drug use and sexual behavior in the office, and as a central figure in Mr. Belfort's international money laundering efforts, for which he is ultimately arrested.

Mr. Greene was never arrested for any activity associated with Stratton Oakmont.  Mr. Greene never cooperated with US Attorney's Office, nor any other law enforcement agency in the investigation and prosecution of Mr. Belfort, Mr. Porush, Steve Madden nor any other associates of Statton Oakmont.

The character "Rugrat" in the subject film is based upon the descriptions of Plaintiff as "Wigwam" in the memoir.  While the character "Rugrat" had historical elements of other

individuals added in, the overwhelmingly identifiable individual is Andrew "Wigwam" Greene. This is supported not just by individual audience members who knew Plaintiff at the time (**Arnoff Trx**: pg 19, lines 23-27; Pg 65, lines 1-17; pg. 69, line 16 – pg. 70, line 16; **Gelfand Trx**: pg 30, lines 6-20; pg 34, line 18 – pg 36, line 6; pg 37, line 10 – pg 38, line 16; pg 40, lines 4-13; pg 48, lines 9-14; and pgs 64, line 3 – pg 65, line 22; **Kaufman Trx**: pg 44, lines 18-24; pg 50; line 17 – pg 51, line 16; **Portnoy Trx**: pg 26, lines 4-22; pg 44, line 8 – pg 50, line 3; pg 52, lines 4-10; pg 62, line 25 – pg 63, line 19; pg 83, line 24 – pg 87, line 8; and pg 89, line 15 – pg 91, line 25) , but by and through the deposition testimony of Mr. Winter, Mr. DiCaprio, Mr. Scorsese and by Exhibit "K," which shows that the draft name for the character was "Andy Cohen (Wigwam)."

The defendants are liable for the defamatory presentation of the character, as Mr. Greene did not participate in adulterous/sexual acts at work and did not participate in Mr. Belfort's criminal money laundering scheme. The defendants, by and through their agents, produced and released the subject film with these defamatory representations with reckless disregard for fact-checking and truthful representations regarding Mr. Greene's personal behavior at Stratton Oakmont and total lack of criminal activity.

At the minimum, questions of material issues of fact exist for the jury, in regards to the defamation of Mr. Greene, and the Defendants' reckless disregard for their portrayal of his derivative character. Accordingly, Defendants' motion for summary judgment must be dismissed and the matter scheduled for trial.

## ARGUMENT

**RULE 56.1 STATEMENTS**

Defendants' argument that Plaintiff's Rule 56.1 Statement was non-compliant and therefore admission of the Defendants' statements is baseless and must be disregarded in its entirety.

Defendants filed a series of Statements and declarations from various witnesses, pursuant to Local Rule 56.1 of the Federal Rules of Civil Procedure.  Plaintiff filed a more simple and direct statement of facts pursuant to Local Rule 56.1 in response to Defendants.  At the pre-motion conference held on December 18, 2017, Defendants complained to the Court that Plaintiff's 56.1 Statement did not match Defendants' paragraph by paragraph.  Plaintiff's Counsel noted – quite accurately – that the vast majority of statements included in the multiple declarations and documentation were irrelevant to the case-at-hand.  The Court held that it was within the purview of the Court to determine the relevance of the Defendants' assertions in connection with its motion for summary judgment, and provided a deadline for Plaintiff to file a revised Statement that matched paragraph-by-paragraph for the benefit of the Court's review as to which assertions are in contest.  Plaintiff filed an Amended 56.1 statement responding paragraph-by-paragraph to all of the declarations and supporting documentation associated with Defendants' 56.1 submission.

Since the filing of Plaintiff's Amended 56.1 Statement, Defendants have not communicated any objection thereto or frustration therewith, to Plaintiff's Counsel or this Court.

The spirit and purpose of Local Rule 56.1 is to provide the Court with a simplistic review of material facts to the issues of the case that are either in contest or stipulated to.  The purpose is to ease the Court's review and consideration of prospective motions for summary judgment.

Unfortunately, Defendants' 56.1 Statement was replete with superfluous and irrelevant assertions and materials seeking to prove the overall unethical, unprofessional and - in some instances - illegal conduct of Stratton Oakmont.   Plaintiff has never asserted that Stratton Oakmont, as a firm and as a culture of personalities, was a virtuous firm.  It is well settled fact that the firm as a whole, including several individual employees/officers, was notable as being unscrupulous, unethical, unprofessional and - in certain cases - criminal.  Plaintiff's allegations in the Complaint and assertions throughout this litigation have always been that he did not behave in the same fashion as the firm gained a reputation for.  More specifically, that his behavior was far different from that portrayed by the character "Rugrat" in the film. Unfortunately, Defendants' 56.1 Statement was an exercise in scope-shifting.  The Defendants made a tactical decision to bombard this Court with assertions and documentation surrounding facts that are not at issue in this litigation.  Now, the same parties seek to continue their dilatory and harassing tactic in irrelevance by requesting that the Court treat Plaintiff's 56.1 Statement as an admission of the irrelevant assertions raised in their own.

The simple standard of this motion is whether or not there is a triable issue of fact. The deposition transcripts and documentation, as highlighted in these materials, provide sufficient evidence that there are issues of fact.  Accordingly, the Defendants' motion must be denied.

## LEGAL STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The standard of review for summary judgment motions requires the Court to draw all inferences in favor of the non-moving party.  See *Hayes v NYC Department of Corrections*, 84 F3d 614 (2d Cir.1996).

Mere speculation and conjecture are not acceptable to either establish or defeat a motion for summary judgment.  Similarly, mere conclusory allegations are not sufficient to establish nor defeat a motion for summary judgment.  See *Interboro Inst. v Maurer*, 152 F3d 918 (2d Cir.1998).

As the Court is well aware, the moving party always has the burden to show the lack of material issues of fact.  Material issues of fact are always reserved for a jury.  If and only if the moving party can proffer sufficient evidence to establish that no issues of fact exist, then the burden is shifted to the non-moving party to establish sufficient evidence of a dispute.  See, *Anderson v Liberty Lobby*, 477 US 242, 249, 206 SCt 2505 (1986); *Brady v Town of Colchester*, 863 F2d 205 (2d Cir. 1988); *Crawford v Franklin Credit Mgmt. Corp*, 758 F3d 473 (2d Cir.2014); *Celotex v Catrett*, 477 US 317, 325, 106 SCt 2545 (1986); *Delaney v Bank of America Corp.*, 766 F3d 163 (2d Cir.2014) and *Gallo v Prudential Residential Services*, 22 F3d 1219 (2d Cir.1994).

Libel *per se*, is defined as "A defamatory statement that is communicated in a fixed medium and is considered to be so harmful on its face that the plaintiff need not prove special damages. Examples of libel per se are statements that: (i) relate to the person's business or profession to the person's detriment; (ii) falsely claim that the person committed a crime of moral turpitude; (iii) imputes unchastity on the person; or (iv) claim that the person suffers from a loathsome disease."   *Legal      Information      Institute*,   dictionary, *www.law.cornell.edu/wex/libel_per_se*;   see   also,   *Restatement   (2nd)   of   Torts*,   §§570-574;

*Liberman v Gelstein*, 80 NY 2d 429 (1992); *Golub v Enquirer/Star Group, Inc.*, 89 NY 2d 1074 (1997); and *Moore v Francis*, 121 NY 199 (1890); *600 West 115th Street Corp v Von Gutfeld*, 169 AD 2d 56 (1st Dept.1999)(words which "impute to Plaintiff the commission of an indictable offense upon conviction of which punishment may be inflicted…is defamation per se") <u>quoting</u> *Privitera v Town of Phelps*, 79 AD 2d 1 (4th Dept.1981); *Berkson v Time, Inc.*, 8 AD 2d 352 (1st Dept.1959)(publication charging crime involving moral turpitude or importing "a criminal or disgraceful charge" is actionable per se); *Corrigan v Bobbs-Merrill Co.*, 228 NY 58 (1920)("[t]he fact that the publisher has no actual intention to defame a particular man or indeed to injure any one, does not prevent recovery of compensatory damages by one who connects himself with the publication…. The question is not so much who was aimed at, as who was hit.")

The standard of burden for the moving party, and opposing party if needed, is one of clear and convincing evidence in libel *per se* cases.  See *Anderson v Liberty Lobby, Inc.* 477 US 242, 106 SCt 2505, 91 LEd 2d 202 (1986); *Kahl v Bureau of National Affairs, Inc.*, 852 F3d 106 (DC Cir. 2017).

**PLAINTIFF CAN SATISFY THE "ACTUAL MALICE" REQUIREMENT**

Plaintiff can satisfy the requisite showing of "actual malice" on the part of Defendants in this matter.  As a result, the motion for summary judgment must be denied.

In the seminal case of *New York Times v Sullivan*, 376 US 254, 84 SCt 710, 11 LE 2d 686 (1964), the Courts have held that in order to prove actual malice, a Plaintiff must show Defendant(s) knowledge that the defamatory statement was false or made with reckless disregard of whether it was true or not.  Given the difficulty of showing actual knowledge, the Courts have widely grasped the "reckless disregard as to the truth" aspect of the actual malice element.  The showing of a defendant's reckless disregard precludes them from summary judgment.  *DiBella v*

*Hopkins*, 403 F3d 102 (2d Cir.2005).

This standard was further discussed in this Court's memorandum decision on Defendants' motion to dismiss pursuant to FRCP 12(b)(6).  (See Dkt. 25, ¶60)

The Courts have further developed a subjective/objective test for determining reckless disregard.  (See, *Davis v Ross*, 754 F2d 80 (2d Cir.1985); *Harte-Hanks Communications v Connaughton*, 491 US 657 (1989); Essentially, the court must examine whether an issue of fact exists as to the subjective knowledge and intent of the Defendants to publish information that objectively defames Plaintiff.  Contrary to the discussions in Defendants' motion papers, *Bose Corp v Consumers Union*, 466 US 485, 104 SCt 1949, 80 LE 2d 502 (1984), the Supreme Court held that subject intent can by established by objective manifestations of the defamation.  The showing that a defendant's suspicions or reason to believe the information in a portrayal is false, is sufficient to satisfy the element of reckless disregard. (*Davis v Costa-Gavras*, 654 Fsupp 653 (SDNY 1987)).

While a defendant's mere failure to investigate is not sufficient to satisfy reckless disregard, its failure properly research and investigate published assertions within the four categories of libel *per se*, that it has a reasonable belief or opportunity to research, is clear and convincing evidence of reckless disregard.  (See, *Gertz v Robert Welch*, 418 US 323 (1974); *McFarlane v Sheridan Square Press, Inc*., 91 F3d 1501 (DC Cir.1996); *Newton v National Broadcasting Co., Inc*., 930 F2d 662 (9th Cir.1990); *St. Amant v Thompson*, 390 US 727, 88 SCt 1323, 20 LE2d 262 (1968))  Conversely, a defendant's proof of research and due diligence can establish its argument for summary judgment.  *Contemporary Mission Inc., v NY Times Co.,* 842 F2d 612 (2d Cir.1933).

11

Overall though, summary judgment should only be granted where there is no question of fact as to the publisher's knowledge of inaccuracy. *Masson v New Yorker Magazine*, 501 US 496 (1991).

In the case-at-hand, there is clear and convincing evidence of the limited if not wholly lacking attempt to properly research and corroborate the aspects of Mr. Belfort's accounts that were going to be portrayed in the subject film. Beyond this, Defendants' agents conceded under oath that they were not concerned with the factual accuracy of their portrayal.

Interestingly, Defendants proffer the information that an individual – Danny Porush – contacted members of the production companies and the press about his distaste for casting Jonah Hill to portray his character in the film, as evidence that the Plaintiff had opportunity to contact producers prior to filming about his concerns. Unfortunately, their assertions ignore his ongoing social relationship with Jordan Belfort, who was knowledgeable of script development and casting decisions as they occurred. Moreover, any assertion that because Mr. Porush was aware of pre-production activity, any other individuals must have been is purely speculative and legally insufficient for a motion seeking summary judgment.

Further, Defendants proffer the declaration of Joey McFarland, an officer/director from Defendant RED GRANITE as to their clearance procedures. (See McFarland Declaration as Defense Exhibit) Yet a review of the McFarland declaration shows that while he includes a conclusory paragraph that he understood all legal clearance procedures had been followed, he offers no evidence of same. Most glaringly, is that Mr. McFarland, as with Mr. Winter and Mr. DiCaprio, cite to their numerous discussions with Jordan Belfort as their attempts at due diligence.

Defendants, in that vein, proffered a declaration by Mr. Belfort himself as evidence of Plaintiff's poor behavior while at Stratton Oakmont that would be consisted with the film's portrayal. Further, Mr. Belfort seeks to conclude that Plaintiff was the individual referred to as an "unindicted co-conspirator" who had cooperated with authorities in the investigation of his Indictment. As the Court is aware, this is purely speculative and legally insufficient. Moreover, it is factually incorrect. As the Court is also aware, were Mr. Greene to have been a cooperating witness, documentation to such effect would have been filed with the Court and Mr. Greene's appearance for an allocution to some crime would have required. No such record exists as no such action ever existed. What is most concerning, bordering upon egregious, is that Defendants seek the support of Jordan Belfort in their defense generally and in furtherance of their motion for summary judgment. Jordan Belfort is a man, as the Court is well aware, who has admitted to regularly and pathologically lying to customers, colleagues, law enforcement and Courts since he started Stratton Oakmont. The declaration of and reliance upon Mr. Belfort for a source of any information is utterly reckless, if not wholly disingenuous on the part of Defendants in all aspects of the film's production and this litigation. Arguably, it should be accepted alone as sufficient proof of Defendants' reckless disregard for the truth in producing this film.

As described throughout, the three individuals most responsible for script development were Terence Winter, the screenwriter; Leonardo DiCaprio and Director Martin Scorsese. All three (3) have discussed under oath their very limited attempts to research the accuracy of the portrayals in the film. In fact, a review of the relevant transcripts shows that other than conversations with Mr. Belfort, the three (3) men did little other than generic research of Wall Street businesses as well as on-site reviews of the offices where Stratton Oakmont once operated and the house occupied by Mr. Belfort during the relevant time for the film. Such limited

research regarding portrayals of real-life incidents and individuals is clear and convincing evidence of Defendants' reckless disregard for accuracy.  (**Winter Trx**: pg 20, line 10 – pg 24, line 5; pg 26, line 24 – pg 27, line 16; pg 49, lines 9-23; pg 50, lines 3-7 and pg 55, line 22 – pg 57, line 7;  **DiCaprio Trx**: pg 10, line 22 – pg 13, line 19; pg 15, line 13 – pg 16, line 18; pg 20, line 17 – pg 22, line 10; pg 22, line 20 – pg 25, line 5 and pg 26, line 21 – pg 29, line 6; **Scorsese Trx**: pg 12, line 5 – pg 13, line 4; pg 13, line 15 – pg 14, line 22; pg 15, line 17 – pg 16, line 14; pg 23, line 18 – pg 24, line 16 and pg 26, line 20 – pg 27, line 20.)

None of Defendants' witnesses, including Jennifer Davisson an employee at Defendant APPIAN WAY could testify with any knowledge as to who or how any legal clearance was performed in associating with the film's production.  (Davisson Trx: pg 32, line 24 – pg 34, line 3 and pg 35, lines 3-15).

Such lack of evidence of any legal clearances or protocol, in conjunction with the utter lack of research and "vetting" process is clear and convincing evidence of an issue of fact surrounding Defendants' reckless disregard for truth in the film's production.

However, a more pointed and direct response shows the absolute and unequivocal reckless disregard on the part of the Defendants.  Screenwriter Terence Winter testified during his deposition very clearly that factual accuracy was not important to Defendants in developing the script and film production.  The only concern Defendants had was to portray the mania of Jordan Belfort's point-of-view.  As Mr. Winter succinctly described in his deposition, vetting and research were simply not a concern. (Winter Trx: pg 51, line 17 – pg 54, line 13)

As a result of the foregoing, it is clear that Defendants engaged in reckless disregard for the truth in producing the subject film.  Therefore, Plaintiff has absolutely satisfied the elements of Actual Malice and put forth an issue of fact that must only be considered by a jury.

14

Accordingly, Defendants' motion for summary judgment must be denied in its entirety.


 **"OF AND CONCERNING" THE PLAINTIFF**

Clear and convincing evidence exists that the "Rugrat" character in the subject film is a portrayal of Plaintiff.  Accordingly, Plaintiff can satisfy the "of and concerning" element of defamation actions.

The "of and concerning" element is a factual element exclusively left to juries, absent a narrow circumstance where the Court may determine as a matter of law that the specific allegations included in a Complaint "are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff." *Diaz v NBC Universal, Inc*., 536 FSupp2d 337, 339 (SDNY 2008) <u>citing</u> *Church of Scientology Intern. v Time Warner, Inc*. 806 FSupp 1157 (SDNY, 1992).  *Church of Scientology v Time Warner* further stands for the notion that less significant inaccuracies can have a cumulative effect, pendant upon the subsidiary meaning doctrine.

Defendants cite to *Springer v Viking Press*, 90 AD 2d, 457 NYS 2d 246 (1st Dept. 1982).  While the holding in *Springer* articulated that under its factual analysis, the "of and concerning" requirement is not met simply by using unique characteristics of an individual.  More specifically, the Court in *Springer* held that under its fact pattern, no reasonable person could decide if the subject fictional character was the Plaintiff.

The features of a character or portrayal must be readily identifiable with the plaintiff in order to support their claim.  <u>See</u> *Dworkin v Hustler Magazine, Inc*., 867 F2d 1188 (9th Cir.1989); *Batra v Wolf, No*.: 0116059/2004, 2004 WL 827906 (Sup. Ct. NY County, 03/14/2008); *Carter-Clark v Random House, Inc*., 196 Misc2d 1011, 768 NYS 2d 290 (Sup. Ct.

NY County 2003), aff'd 17 AD 3d 241, 793 NYS 2d 394 (1st Dept.2005).

However, under the factual analysis of the case-at-hand, the Court could readily find a reasonable juror can identify the "Rugrat" character as the Plaintiff, given that actual individuals who were associated with Stratton Oakmont in the mid-1990s identified the character as portraying Plaintiff.  The depositions transcripts of Mr. Arnoff, Gelfand, Kaufman and Portenoy clearly confirm that the "Rugrat" character was readily identifiable as Mr. Greene.  Even Plaintiff's estranged fiancé, Stacy Rettinger, conceded the character as readily identifiable to her and her friends.  (Rettinger Trx: pg 31, line 20 – pg 33, line 6 and pg 56, line 7 – pg 57, line 6.)

Beyond the identification of "Rugrat" with Mr. Greene by individual witnesses associated with Stratton Oakmont, Defense witnesses who participated in script development have conceded the portrayal.  Screenwriter Terence Winter described his process for taking the Wigwam character, Plaintiff, and combining him with an individual who was arrested named Gary Kaminsky.  (Winter Trx: pg 26, lines 13-17; pg 28, line 21 – pg 30, line 22)  Leonardo DiCaprio, the actor who portrayed Mr. Belfort and who participated in script development meetings with Mr. Winter and Director Martin Scorsese also identified the "Rugrat" character as a portrayal of Wigwam, or Mr. Greene.  (DiCaprio Trx: pg 35, lines 8 – 22)  Mr. Scorsese further identified the "Rugrat" character as a portrayal of the book's Wigwam, or Mr. Greene.  (Scorsese Trx: pg 27, line 21 – pg 29, line 10)

Contrary to Defendants' arguments in their submissions, there is overwhelming evidence that the "Rugrat" character is "of and concerning" Plaintiff.  The character was readily identifiable as a portrayal of Plaintiff, by both individuals who participated in script development and members of the public who were once associated with Stratton Oakmont.

As a result, it is clear that Plaintiff can satisfy the "of and concerning" element of defamation, creating an issue of fact for a jury.  Accordingly, the Defendants' motion must be denied in its entirety.

**DEFENDANTS' PORTRAYAL OF PLAINTIFF SATISFIES LIBEL *PER SE***

The Defendants' portrayal of Plaintiff unequivocally satisfies the prongs of libel *per se*. As discussed above, the four qualities/characteristics that make up defamation per se include "(ii) falsely claim that the person committed a crime of moral turpitude; [and/or] (iii) imputes unchastity on the person...." *Legal Information Institute*, dictionary, *www.law.cornell.edu/wex/libel_per_se*; see also, *Restatement (2ⁿᵈ) of Torts*, §§570-574; also see the various cases cited herein above.

The "Rugrat" character in the subject film is a central figure to Mr. Belfort's international money laundering scheme.  He is the character who orchestrates Mr. Belfort's meeting with a Swiss Banker and attends the foundational meetings in Switzerland where the laundering scheme is discussed.  Further, the "Rugrat" character is portrayed as being arrested in the film.  These fictional elements clearly satisfy the second characteristic of committing a crime of moral turpitude.

Plaintiff was never arrested for anything related to Mr. Belfort's money laundering scheme.  In fact, Plaintiff was never arrested for any activities associated with Stratton Oakmont.  Mr. Greene further was never a cooperating witness against Mr. Belfort, Mr. Porush or any other individuals associated with Stratton Oakmont.  As the Court is aware, the Justice Department almost exclusively requires cooperating witnesses to plead guilty to offenses (charged or not) for which they have committed as part of their cooperation efforts.  Mr. Greene has no such record.

Defendants' allegations that Mr. Greene is the individual identified as an "unindicted co-conspirator" in Mr. Belfort's Indictment, is pure speculation and conjecture.  As the court is also aware, it is well-settled that speculation and conjecture are wholly inadequate as arguments in motions seeking summary judgment.   Put simply, the "Rugrat" character is directly implicated and shown to be arrested as part in Mr. Belfort's money laundering scheme for which he ultimately pled guilty.  Defendants' arguments that Plaintiff cannot show a category of libel *per se* is wholly meritless and must fail.

Additionally, the "Rugrat" character in the subject film is shown to regularly engage in sexual acts with women other than his wife, in the office of Stratton Oakmont.  A non-party witness, Bud Clarke, testified at deposition that he saw Mr. Greene participate in oral sex with a prostitute at the office on a single occasion.  (Clarke Trx, pg 66, line 25 – pg. 67, line 24)  However, it is insufficient to say that prove that no material issue of fact exists as to Mr. Greene's engaging in, or lack of engaging in, inappropriate sexual behavior at the office of Stratton Oakmont.  Mr. Clarke has admittedly undergone a significant falling-out with Plaintiff (Clarke Trx, pg 66, line 25 – pg. 67, line 24) and his account of the single event is questionable, given his capacity to witness same under the circumstances described.  Mr. Clarke's capacity of recollection is also questionable given his obvious misidentification of certain individuals and actions depicted in the memoir and subject film, that are irrelevant to Mr. Greene's claims herein.

As a result, there is a material issue of fact surrounding the third category of defamation *per se*.  A material issue of fact exists for a jury to decide as to whether the portrayal of the "Rugrat" character engaging in multiple sexual acts in the office of Stratton Oakmont defames Mr. Greene.

Accordingly, Plaintiff has clearly met the criteria for both the second and third categories of libel *per se*, and Defendants' motion for summary judgment must be denied in its entirety.


**PLAINTIFF'S CLAIMS OF SPECIAL DAMAGES ARE MERITORIOUS**

Plaintiff's claims of special damages are meritorious.   Mr. Greene was subjected to ridicule, humiliation and loss of reputation amongst his family, colleagues and individuals in the public as a result of the portrayal of the "Rugrat" character.   However, it must be noted that in cases of libel per se, the requirements of a claimant providing substantial evidence of special damages is not applicable.

Under *Pure Power Boot Camp, Inc v Warrior Fitness Boot Camp, LLC*, 813 FSupp2d 489 (SDNY, 2011), the Court upheld the notion that defamation *per se* cases are an exception to the requirement that a plaintiff must prove special damages.   While the Court in that case dismissed the claim, it was distinguishable from the case-at-hand, where the Defendants have portrayed a caricature of Plaintiff engaged in and being arrested for a crime of moral turpitude, as well as imputing unchastity on Mr. Greene.

Defendants argue that Mr. Greene's own actions have subjected him to public ridicule, rather than the defamatory portrayal in the subject film.   In furtherance of this notion, they cite to *Karedes v Ackerley Group, Inc.*, 423 F3d 107 (2d Cir.2005).   However, the case-at-hand is distinguishable.   Plaintiff testified to several instances of ridicule by family and colleagues and a belief that he lost work as a result of individuals questioning his relationship to the "Rugrat" character in the film.   (See **Rettinger Trx**: pg 50, line 13 – pg 53, line 22 and pg 62, lines 2 -15.; **Portnoy Trx**: pg 44, line 8 – pg 50, line 3; pg 52, lines 4-10; pg 83, line 24 – pg 87, line 8 and pg 89, line 15 – pg 91, line 25.) Accordingly, an issue of fact exists where the assertions of the

character are so extreme as to satisfy the categories under libel *per se*, as they do in the case-at-hand.

Accordingly, Defendants' arguments surrounding the special damages are meritless and must be disregarded.  As a result, the Court must deny Defendant's motion for summary judgment.

## CONCLUSION

As a result of the above, Plaintiff has clearly shown evidence that he can establish all of the necessary elements of libel per se in the remaining cause-of-action in this case.  Accordingly, even if the Court concludes that Defendants met their initial burden in their motion, Plaintiff has clearly and convincingly shown that material issues of fact exist for the trier of fact.  As such, the Court must deny Defendants' motion for summary judgment in its entirety.

WHEREFORE, upon the annexed exhibits and Plaintiff's sworn deposition, as well as the pleadings and proceedings heretofore had herein, the Court must issue an Order denying the Defendants' motion for summary judgment seeking to dismiss the action, in its entirety; scheduling this matter for trial; and for such other and further relief as this Court deems just and proper.

Dated: March 5, 2018
      New York, NY

                          _____/s/_____
                          AARON M. GOLDSMITH, ESQ.
                          225 Broadway, Suite 715
                          New York, NY 10007
                          (914) 588-2679
                          *aarongoldsmithlaw@gmail.com*

TO:

DAVIS, WRIGHT TREMAINE, LLP
Katherine M. Bolger, Esq.
Rachel F. Strom, Esq.
1251 Avenue of the Americas, 21st FL
New York, NY 10020-1104
*rachelstrom@dwt.com*
*katebolger@dwt.com*

LEOPOLD, PETRICH & SMITH, PC
Louis P. Petrich, Esq. (admitted *Pro Hac Vice*)
Vincent Cox, Esq.
2049 Century Park East, Suite 3110
Los Angeles, CA 90067-3274
*lpetrich@lpsla.com*

## **DECLARATION OF SERVICE**

I certify that, on this date of March 5, 2018, a copy of Counsel's Memorandum of Law and Authorities in Opposition to Defendants' Motion for Summary Judgment was served upon Defendants by email and mail to her counsel at the following address:

DAVIS, WRIGHT TREMAINE, LLP
Katherine M. Bolger, Esq.
Rachel F. Strom, Esq.
1251 Avenue of the Americas, 21st FL
New York, NY 10020-1104
*rachelstrom@dwt.com*
*katebolger@dwt.com*

LEOPOLD, PETRICH & SMITH, PC
Louis P. Petrich, Esq. (admitted *Pro Hac Vice*)
Vincent Cox, Esq.
2049 Century Park East, Suite 3110
Los Angeles, CA 90067-3274
*lpetrich@lpsla.com*

_____/s/_____
AARON M. GOLDSMITH, ESQ